UNITED STATES DISTRICT COURT

                    EASTERN DISTRICT OF LOUISIANA


SCOOTER'S CHICKEN                                CIVIL ACTION
INTERNATIONAL, LLC

v.                                               NO. 13-6766

SUNDAY DINNER, LLC, ET AL.                       SECTION "F"


                         ORDER AND REASONS

     Before the Court is the defendants' motion to dismiss or transfer.  For the reasons that follow, the motion is GRANTED, and the plaintiff's lawsuit is dismissed without prejudice.

                              **Background**

     This litigation arises out of an alleged scheme orchestrated by a franchisee of Scooter's Chicken in which the franchisee misappropriated Scooter's intellectual property and proprietary information and, without authorization, transformed the restaurant into Rooster's Chicken, a carbon copy of Scooter's.

     In 2007 Brandon J. Hidalgo founded Scooter's Chicken International, L.L.C.,[1] a casual dining restaurant chain that operated under the trade name of Scooter's Chicken.  Hidalgo created the menu, recipes, restaurant layout, images, and logos for Scooter's Chicken.  His concept was designed and marketed to become

---

        [1]Scooter's Chicken International's principle place of business was located in Metairie, Louisiana.

                                 1

a national brand with franchising as the catalyst for expansion. The company grew and multiple Scooter's Chicken restaurants opened across south Louisiana and Mississippi.

Larry Williamson was the landlord and owner of the property at 2501 Highway 11 North, in Picayune, Mississippi, where one Scooter's Chicken franchise was located, Store No. 2202. Store No. 2202 was a large, free-standing building that Hidalgo envisioned would serve as a flagship restaurant for Scooter's. The Scooter's Restaurant that had opened there in May 2012. But it was unprofitable, and the franchisee intended to close Store No. 2202. In early 2013 Hidalgo began discussions with Williamson about the prospect of Williamson taking over as franchisee of Store No. 2202. Williamson expressed interest in the Scooter's Chicken concept, product, and franchise development.

They reached a deal. Williamson, on behalf of his company Sunday Dinner, L.L.C., entered into a franchise agreement with Hildago, on behalf of Scooter's Chicken International, L.L.C. for the operation of the Scooter's Chicken restaurant at Store No. 2202. The franchise agreement was executed on March 6, 2013, and had an initial term of 20 years. In entering into the agreement, Hidalgo agreed to waive the initial $25,000 franchise fee; he also agreed to personally train Williamson, his managers, and his employees in Scooter's Chicken operations, procedures, trade secrets, and recipes. To fulfill his part, Hidalgo traveled daily

2

from Metairie, Louisiana to Picayune, Mississippi to assist in training the employees, marketing, and to help the overall performance of Scooter's Chicken Store No. 2202.

Store No. 2202 was (allegedly) a success. Williamson was so pleased that he inquired about building additional franchises. And Hidalgo claims he was approached by numerous investors and brokers who were interested in expanding the franchise.

But the relationship between Hidalgo and Williamson soured. After a couple months of operations, Williamson began excluding Hidalgo. Store No. 2202's manager told Hidalgo not to return, and ordered him to stop training and even speaking with employees. All said to be part of Williamson's alleged scheme to eliminate Hidalgo's involvement, so that he could transform Scooter's Chicken into a carbon copy restaurant operating under a different name. In furtherance of Williamson's plan, Store No. 2202 violated Scooter's Chicken company protocol and procedures: it failed to use proper sales specials; failed to abide by labor reporting guidelines; failed to follow food standard policies; sold unapproved products; marketed products without approval; improperly used the company logo; and failed to report profits and losses. All violations of the franchise agreement.

On May 17, 2013 Hidalgo, by email, demanded that Williamson and Sunday Dinner, L.L.C. cease and desist from operating Store No. 2202, and that they remove all signs, logos, food and intellectual

property of Scooter's Chicken.  Williamson continued to operate the fast food chicken restaurant, albeit by a different name; he painted over all Scooter's signs and wrote "Rooster's".[2]  Williamson continued to use all of the menus, products, techniques, and intellectual property that Hidalgo had created for the exclusive use of his Scooter's franchise.  To this day, it is alleged, Williamson and Sunday Dinner continue to operate and promote Rooster's Chicken, all the while using Scooter's proprietary information and intellectual property.

On December 23, 2013 Scooter's Chicken International, L.L.C. sued Sunday Dinner, L.L.C. and Larry Williamson for breach of contract, breach of the covenant of good faith and fair dealing, detrimental reliance, intentional misrepresentation, unfair trade practices, and tortious interference with contract.  Scooter's Chicken seeks general damages, permanent injunctive relief, and attorney's fees and costs.  Denying the existence of jurisdictional amount, the defendants now seek dismissal of the plaintiff's claims for lack of subject matter or personal jurisdiction; alternatively, they request that venue be transferred.

I.

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the Court should consider the Rule 12(b)(1)

---

[2] Hidalgo discovered this development around July 18, 2013.

jurisdictional attack before addressing any attack on the merits." Morris v. Livingston, 739 F.3d 740, 745 (5th Cir. 2014)(quoting Randall D. Wolcott, M.D., P.A. v. Sebelius, 635 F.3d 757, 762 (5th Cir. 2011)). Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the Court's subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." Alfonso v. United States, --- F.3d ---, 2014 WL 1884891, at *1 (5th Cir. May 12, 2014)(quoting In re FEMA Trailer Formaldehyde Prods. Liab. Litig., 646 F.3d 185, 189 (5th Cir. 2011)(internal citation and quotation marks omitted)). "As a court of limited jurisdiction, a federal court must affirmatively ascertain subject-matter jurisdiction before adjudicating a suit. The district court should dismiss where it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction." Venable v. Louisiana Workers' Compensation Corp., 740 F.3d 937, 941 (5th Cir. 2014)(citations and internal quotations omitted). The Court may find a plausible set of facts to support subject matter jurisdiction by considering any of the following: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Spotts v. United States, 613 F.3d 559, 565-66 (5th Cir. 2010)(citation omitted); Ambraco, Inc. v.

5

Clipper Faith MV, 570 F.3d 233, 238 (5th Cir. 2009)(in considering a Rule 12(b)(1) motion to dismiss, "the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments"), cert. denied, 588 U.S. 1111 (2009).

The standard of review applicable to motions to dismiss under Rule 12(b)(1) is similar to that applicable to motions to dismiss under Rule 12(b)(6).  See Williams v. Wynne, 533 F.3d 360, 364-65 n.2 (5th Cir. 2008)(observing that the Rule 12(b)(1) and Rule 12(b)(6) standards are similar, but noting that applying the Rule 12(b)(1) standard permits the Court to consider a broader range of materials in resolving the motion). "'[T]he central issue [in deciding a motion to dismiss] is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief.'"  Gentilello v. Rege, 627 F.3d 540, 544 (5th Cir. 2010)(citation omitted).  To survive a Rule 12 motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)(quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009))(internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.

II.

*A.*

The plaintiff attempts to invoke this Court's diversity jurisdiction.  28 U.S.C. § 1332 requires "the matter in controversy [to] exceed[ ] the sum or value of $75,000, exclusive of interest and costs, and [be] between ... citizens of different States...." 28 U.S.C. § 1332; Mumfrey v. CVS Pharmacy, Inc., 719 F.3d 392, 397 (5th Cir. 2013).  The parties do not dispute diversity of citizenship.  Instead, the defendants charge that the plaintiff has failed to satisfy its burden of establishing that the amount in controversy requirement is met.  The Court agrees.

When, as here, a plaintiff fails in his complaint to allege a specific amount of damages, he must when challenged prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount.  St. Paul Reinsurance Co., Ltd. v. Greenberg, 134 F.3d 1250, 1253 (5th Cir. 1998)(citing Allen v. R&H Oil & Gas. Co., 63 F.3d 1326, 1335 (5th Cir. 1995)).  If it is not facially apparent from the complaint that the claims exceed $75,000, the Court may look to summary judgment-type evidence to ascertain the amount in controversy.  Id.

*B.*

The plaintiff's sole allegation concerning subject matter jurisdiction is "[t]his Court has jurisdiction pursuant to 28 U.S.C. § 1332, because there is diversity of citizenship and the

7

amount in controversy exceeds $75,000.00, exclusive of costs and interest." The plaintiff seeks to recover damages for breach of contract, detrimental reliance, unfair trade practices, and tortious interference with contract; the plaintiff also seeks injunctive relief in connection with the defendants' breach of the franchise agreement and misappropriation of proprietary information.[3]  Beyond referencing how to calculate royalty fees, service fees, and advertising fees (all percentages of sales), the complaint offers no guidance for determining how much is at stake in this litigation. And it is not facially-apparent that the plaintiff's claims exceed the jurisdictional threshold. Resort to summary judgment-type evidence likewise fails to advance the quantum inquiry here.

In support of their contention that the amount in controversy requirement is not met, the defendants submit that they stopped operating the franchise, or any restaurant at all, after seven months because it was not profitable. As to the lost fees and royalties that the plaintiff seeks to recover, the defendants submit invoices for combined fees and royalties in the scant amount of $2,396 for March 2013; using this to estimate the seven months of lost royalties and fees, the defendants estimate that this

---

[3] "The amount in controversy in an action for ... injunctive relief is the value of the right to be protected or the extent of the injury to be prevented." St. Paul Reinsurance Co., Ltd. v. Greenberg, 134 F.3d 1250, 1252-53 (5th Cir. 1998)(citation omitted).

dispute involves only around $17,000, well below the jurisdictional threshold.  Even assuming that defendants stole proprietary information, they submit that there is no reasonable basis to believe that any damages, together with the lost royalties and fees, would exceed $75,000.  The plaintiff counters, in conclusory fashion, that the term of the franchise agreement was for 20 years, not seven months, and that in addition to failure to pay royalties and fees, plaintiff seeks to recover for stolen intellectual property and attorney's fees.  The plaintiff offers nothing to assist the Court in quantifying the alleged damages; rather, they merely suggest smugly "[i]t goes without saying that [p]laintiff's total damage claims far exceed $17,000.00."[4]  The Court disagrees.

The Court declines to indulge the plaintiff's unsupported conclusions regarding the jurisdictional amount in controversy. The only evidence before the Court are the invoices for nominal royalty fees.  That the term of the franchise was for 20 years does not serve the plaintiff to increase the amount in controversy where, as the plaintiff points out, royalty fees are calculated as a percentage of gross sales and, here, the franchise ceased operations not long after it switched to defendants' hands.  In fact, neither side has offered any evidence to assist the Court in ascertaining actual potential damages for the contract-related

---

[4]Alternatively, the plaintiff urges the Court to dismiss their case without prejudice so that it may be re-filed in state court.

claims; likewise, there is nothing in this record to suggest any reasonable estimate of the value of the proprietary information allegedly stolen.  The plaintiff's unsupported claims, without more, fall short of establishing that the amount in controversy, more likely than not, exceeds $75,000.  Plaintiff has failed to meet its burden.

Accordingly, the defendants' motion to dismiss is GRANTED; the plaintiff's lawsuit is dismissed without prejudice for lack of subject matter jurisdiction.

New Orleans, Louisiana, July 23, 2014

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE